IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> KENNETH HOWARD TAYLOR, II, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Criminal Action No. 24-cr-00130-LKG <br> ) <br> ) Dated: January 10, 2025 <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S PRETRIAL MOTIONS**

**I.      INTRODUCTION**

The Defendant, Kenneth Howard Taylor, II, has filed a motion to dismiss the Indictment under the Second Amendment and a motion to suppress evidence and statements. ECF Nos. 28 and 30. These motions are fully briefed. ECF Nos. 28, 30, 47 and 53. The Court held a hearing on the motions on December 17, 2024. ECF No. 55. For the reasons that follow, and the reasons stated during the December 17, 2024, hearing, the Court: (1) **DENIES** the Defendant's motion to dismiss the Indictment under the Second Amendment (ECF No. 30); (2) **DENIES** the Defendant's motion to suppress with regards to the evidence recovered from the search of the Defendant's vehicle; and (3) **DENIES** the Defendant's motion to suppress with regards to the Defendant's statements **WITHOUT PREJUDICE** (ECF No. 28).

**II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On April 18, 2024, a Grand Jury sitting in the District of Maryland returned an Indictment, charging the Defendant, Kenneth Howard Taylor, II, with one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. On

---

[1] The facts recited in this memorandum opinion are derived from the Indictment; the Defendant's motion to suppress; the Government's response in opposition thereto; the testimony of Detective Daniel Parrish and Officer Joshua Brackett, during the December 17, 2024, hearing; and the parties' hearing exhibits. ECF Nos. 1, 28, 47 and 55.

May 1, 2024, the Defendant appeared before the Court for an initial appearance, arraignment and detention hearing, during which he pled not guilty to the offense charged. ECF No. 8.

### The December 26, 2023, Traffic Stop

As background, the charge in this case arises from a December 26, 2023, traffic stop, during which Prince George's County, Maryland law enforcement officers recovered a loaded handgun under the driver's seat of the Defendant's vehicle. *See generally* ECF Nos. 28 and 47. Specifically, on December 26, 2023, at approximately 9:10 p.m., Detective Daniel Parrish of the Prince George's County, Maryland Police Department was on overnight routine patrol on Annapolis Road, between Maryland Route 295 and Maryland Route 410 in Hyattsville, Maryland. ECF No. 47 at 4. Detective Parrish observed a blue 2007 Audi A6, which was being driven by the Defendant, pass his police vehicle on the right side. *Id*.

During the suppression hearing, Detective Parrish testified that he observed that the Defendant's vehicle had an inoperable registration plate light, or "tag light," on the rear license plate and that the vehicle also had heavily tinted windows. *Id*. at 4; ECF No. 55. And so, Detective Parrish testified that, based upon his understanding that the missing tag light was a traffic violation, and the heavy window tint was a safety concern, he activated his emergency lights and sirens to conduct a traffic stop. ECF No. 55; ECF No. 47 at 4-5.

The Defendant's vehicle continued to drive past two shopping center entrances before slowing down, pulling into a shopping center entrance and coming to a stop. ECF No. 55; ECF No. 47 at 5. When the Defendant's vehicle came to a stop, Detective Parrish parked and exited his police vehicle and walked toward the left side of the Defendant's vehicle. ECF No. 47 at 6.

The Defendant began to roll down his driver's side window and Detective Parrish instructed the Defendant to roll the vehicle's rear windows down, because he could not see through the window tint of the vehicle. ECF No. 5; Gov. Ex. 2 at 21:03:33. Detective Parrish then asked the Defendant for his license and registration. *Id*.

Detective Parrish also informed the Defendant that his tag light was out and that the window tint on his vehicle was too dark. ECF No. 55. The Defendant replied, "Oh I don't have tag lights, my bad officer." Gov. Ex. 2 at 21:03:57. The Defendant also informed Detective Parrish that he was the registered owner of the vehicle and that the tint level on the vehicle was "about 15%." ECF No. 47 at 6; Gov. Ex. 2 at 21:04:12.

Detective Parrish testified that the Defendant handed him a Washington, DC learner's permit and a Virginia Department of Motor Vehicle registration document. ECF No. 55; *see also* Gov. Ex. 4 at 14, 17. Detective Parrish also testified that he observed that the Defendant's vehicle was registered to the Defendant at a Waldorf, Maryland address.[2] ECF No. 55; *see also* Gov. Ex. 4 at 17.

Detective Parrish then asked the Defendant if there was anything he was not supposed to have in the car, like guns or drugs and the Defendant replied, "No." Gov. Ex. 2 at 21:04:45. Detective Parrish testified that he then walked to his police vehicle, placed the Defendant's learner's permit and vehicle registration document down and put on gloves. ECF No. 55; *see also* Gov. Ex. 2 at 21:05:13. Detective Parrish also testified that, at this time, other officers arrived at the scene. ECF No. 55. And so, Detective Parrish walked back over to the Defendant's vehicle and again asked if the Defendant had any weapons or guns on him, or in the vehicle, and the Defendant answered, "No." ECF No. 55; Gov. Ex. 2 at 21:05:48. Detective Parrish then asked if the Defendant had any drugs of any kind and the Defendant stated that he had a "blunt rolled[.]" ECF No. 55; Gov. Ex. 2 at 21:05:54.

During the suppression hearing, Officer Joshua Brackett testified that, when arrived at the scene of the traffic stop, he shined his flashlight into the Defendant's vehicle and observed the butt of a firearm sticking out from underneath the driver's seat of the vehicle. ECF No. 55. Officer Brackett also testified that, upon observing the butt of the firearm, he began repeating the phrase "7A," which is police code for a firearm. ECF No. 55; *see also* Gov. Ex. 2 at 21:06:07-21:06:19.

Detective Parrish then instructed the Defendant to exit the vehicle. *Id*. Thereafter, Officer Brackett found the handgun under the driver's seat of the Defendant's vehicle and Detective Parrish placed the Defendant in handcuffs. Gov. Ex. 2 at 21:06:19.

---

[2] Detective Parrish issued traffic citations to the Defendant for: (1) failure to equip highway vehicle with required lamps and reflectors (Md. Code Ann. Transp. Art. § 22-216); (2) failure to equip vehicle with ID lamps and to use as required (Md. Code Ann. Transp. Art. § 22-208; (3) driving a motor vehicle on a highway without required license and authorization (Md. Code Ann. Transp. Art. § 16-101(a)(1)); and (4) holder of learner's permit driving without required supervision (Md. Code Ann. Transp. Art. § 16-105(b)(1)). Gov. Ex. 4 at 10-11.

3

During the subsequent search of the Defendant's vehicle, officers recovered a Glock, Model: 30S, .45 Caliber, serial number BWKF867, loaded with 26 rounds of ammunition and one bullet chambered. ECF No. 47 at 9. This handgun and ammunition are the subject of the one-count Indictment in this case for felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).[3] ECF No. 1; ECF No. 47 at 3.

The officers at the scene also asked the Defendant several questions while they were conducting a search of his vehicle. These questions include: (1) whether the Defendant had been arrested before; (2) whether the Defendant was previously arrest on a gun charge; and (3) if the marijuana found in the Defendant's vehicle was for his personal use. ECF No. 47 at 9; Gov. Ex. 3 at 21:07:30, 21:07:30- 21:07:47, 21:08:11, 21:10:36. The video evidence before the Court indicates that the Defendant responded to these questions, but, the Defendant's responses are not always audible. *See id.*

At the conclusion of the search of the Defendant's vehicle, Detective Parrish transported the Defendant to the police station. ECF No. 55. Upon arrival at the police station, Detective Parrish gave the Defendant a *Miranda* warning. ECF No. 55; *see also* Gov. Ex. 2 at 21:31:47-21:32:02. Thereafter, Detective Parrish interviewed the Defendant and asked the Defendant several questions, including: (1) whether he had been arrested before; (2) whether he was on parole or probation; (3) whether the gun recovered from his vehicle was going to "come back hot[;]" and (4) where the Defendant bought the gun found in his vehicle. Gov. Ex. 2 at 21:32:58-21:33:43; 21:34:33; 21:35:29; 21:35:43; 21:36:05; 21:36:16.

Relevant Procedural History

On August 9, 2024, the Defendant filed a filed a motion to suppress evidence. ECF No. 28. On August 19, 2024, the Defendant filed a filed a motion to dismiss the Indictment under the Second Amendment. ECF No. 30. On October 21, 2024, the Government filed a consolidated response in opposition to the Defendant's motions. ECF No. 47. On November 12, 2024, the Defendant filed a reply brief. ECF No. 53.

The Court held a hearing on these motions on December 17, 2024. ECF No. 55. The Defendant's motions having been fully briefed, the Court resolves the pending motions.

---

[3] The officers also recovered approximately 156 grams of marijuana in a clear plastic bag and a rolled up "blunt" of marijuana. ECF No. 47 at 9.

### III.   STANDARDS OF DECISION

#### A.  The Second Amendment

The Second Amendment provides that: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The Second Amendment protects the "individual right to possess and carry weapons in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

#### B.  Traffic Stops And *Carroll* Stops

The Supreme Court has held that when law enforcement stops an automobile and detains the vehicle's occupants, the stop constitutes a seizure under the Fourth Amendment.  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011).  Warrantless Fourth Amendment seizures are "*per se* unreasonable."  *Coolidge v. New Hampshire*, 403 U.S. 443, 454.  But it is well-established that an officer may conduct a traffic stop, if the officer has reasonable suspicion that a traffic violation has occurred, or that criminal activity is afoot.[4]  *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In this regard, the Fourth Circuit has held that, if an officer observes a vehicle commit a traffic violation, he is justified in detaining the offending vehicle.  *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008).  The officer may stop the vehicle "for long enough to issue the driver a citation and determine that the driver is entitled to operate" the vehicle.  *Id*. at 337.  But, if the officer seeks to prolong the traffic stop to allow for investigation into matters beyond the scope of the initial stop, the officer must have reasonable suspicion of other criminal activity or the driver's consent.  *Id*. at 336.  And so, the Court considers the totality of the circumstances when determining an officer's reasonableness.  *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (citing *Arvizu*, 534 U.S. at 273).

---

[4] The standard for reasonable suspicion is "less demanding" than that for probable cause; it requires "at least a minimal level of objective justification." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004).  An officer has reasonable suspicion to make an investigatory stop of a vehicle when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the belief that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In this regard, a warrantless search may be reasonable if one of "a few specifically established and well-delineated exceptions" applies. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The automobile exception to the Fourth Amendment's warrant requirement was established in *Carroll v. United States*. In *Carroll*, the Supreme Court held that "a warrantless search of a vehicle is not unreasonable, and does not violate the Fourth Amendment, if the police have probable cause to believe that the vehicle has contraband." 267 U.S. 132, 158-59 (1925). The scope of a search conducted pursuant to the automobile exception "is no broader and no narrower than a magistrate could legitimately authorize by warrant." *United States v. Ross*, 456 U.S. 798, 825 (1982). And so, if law enforcement has lawfully stopped a vehicle and unearthed probable cause to search the automobile, such probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*.

### C. The Plain View Doctrine

The plain view doctrine authorizes the seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (citing *Texas v. Brown*, 460 U.S. 730, 738 and n.4 (1983)). The Fourth Circuit has held that the Fourth Amendment's protection against unreasonable searches is not implicated when the plain view doctrine applies. *United States v. Runner*, 43 F.4th 417, 421 (4th Cir. 2022); *see also Texas v. Brown*, 460 U.S. at 739-40 (holding that officers have a right to "peer into the interior of [an] automobile" during a traffic stop). Given this, "[v]iewing an article that is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment[.]" *Id*. at 421 (citing *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997)); *see also United States v. Bailey*, No. 23-4564, 2024 WL 3770506, at *2 (4th Cir. 2024) (holding that the plain view exception applied when an officer discovered a gun in plain view and the officer was not precluded from peering into the car's interior); *United States v. Rumley*, 588 F.3d 202, 206 (4th Cir. 2009) (holding that an officer lawfully seized a pistol when it came into plain view and the "deputy immediately recognized as potential evidence of a crime.")

6

### D. *Miranda* Warnings

The Government may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a defendant, unless the Government demonstrates that procedural safeguards were used to secure the privilege against self-incrimination under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1967). A custodial interrogation occurs when law enforcement has initiated questioning of a criminal defendant after taking that individual into custody or otherwise depriving him of his freedom from action in any significant way. *Id*. at 444. Whether a defendant is "in custody" is determined objectively; an officer's subjective and undisclosed view of whether a suspect is in custody is irrelevant. *Stansbury v. California*, 511 U.S. 318, 323 (1994). Unless a defendant is advised of his Fifth Amendment rights pursuant to *Miranda*, or he voluntarily waives those rights, the statements he makes during a custodial interrogation must be suppressed. *United States v. Azua-Rinconada*, 914 F.3d 319, 325 (4th Cir. 2019) (citations omitted). The Supreme Court has held that the term "interrogation" under *Miranda* refers not only to express questioning, but also to police words or conduct that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1990).

## IV.   ANALYSIS

### A. The Court Denies The Defendant's Motion To Dismiss The Indictment Under The Second Amendment

As an initial matter, the Court DENIES the Defendant's motion to dismiss the Indictment in this criminal matter. The Defendant has moved to dismiss the Indictment, based upon facial and as-applied challenges to the constitutionality of 18 U.S.C. 922(g)(1) under the Second Amendment. ECF No. 30. As the Supreme Court has recognized on several occasions, Section 922(g)(1), and similar laws which limit possession of firearms by felon, are presumptively constitutional. *Heller*, 554 U.S. at 627, n.26; *McDonald v. Chicago*, 561 U.S. 742, 786 (2010). Indeed, the Supreme Court has recently re-affirmed that "prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' 'are 'presumptively lawful.'" *United States v. Rahimi*, 602 U.S. 680, 682 (quoting *Heller*, 554 U.S. at 627, n.26). And so, the Defendant's facial challenge to Section 922(g)(1) must fail.

The Defendant's as-applied challenge to Section 922(g)(1) is also unavailing. The Supreme Court has also recognized that there is a longstanding tradition of prohibiting possession of firearms by individuals that pose a danger to the public, and held that "[w]hen an individual poses a clear threat of physical violence to another, [and] the threatening individual may be disarmed." *See Rahimi*, 602 U.S. at 682. Here, the Defendant was previously convicted of three state felony offenses, namely, robbery, conspiracy to commit robbery and theft, in the Circuit Court of Charles County, Maryland. ECF No. 47 at 3 n.1; ECF No. 55. And so, a court has previously determined that the Defendant poses a threat and danger to this community. Given this, the application of Section 922(g)(1) to the Defendant does not violate the Second Amendment. For this reason, the Court DENIES the Defendant's motion to dismiss the Indictment under the Second Amendment.

### B. The Court Denies The Defendant's Motion To Suppress Evidence

The Defendant has also moved to suppress: (1) all tangible and derivative evidence obtained from the December 26, 2023, traffic stop and search of his vehicle and (2) certain statements that he made to law enforcement during and after the traffic stop. ECF No. 28. In this regard, the Defendant argues that the Court should suppress this evidence, because Detective Parrish lacked reasonable suspicion to initiate the December 26, 2023, traffic stop. *Id.* at 1-10.

The Government counters that the suppression of this evidence is not warranted, because Detective Parrish had reasonable suspicion to stop the Defendant's vehicle, and the statements made by the Defendant were not received in violation of his *Miranda* rights. ECF No. 47 at 31-49. And so, the Government requests that the Court deny the Defendant's motion. *Id.* at 49.

For the reasons that follow, the evidence before the Court shows that Detective Parrish had reasonable suspicion to stop the Defendant's vehicle for suspected violations of Maryland motor vehicle laws. The evidence also shows that the subsequent search of the Defendant's vehicle did not violate the Fourth Amendment, because the officers observed a handgun on in plain view inside the Defendant's vehicle.

In addition, the evidence before the Court shows that the officers placed the Defendant in custody and asked questions during the traffic stop, without first providing a *Miranda* warning to the Defendant. But the Defendant has neither sufficiently identified the questions posed or the statements that he made in response to the officers, nor shown that these statements should be suppressed. And so, the Court DENIES the Defendant's motion to suppress with regards to the

8

evidence recovered during the search of his vehicle and DENIES the Defendant's motion to suppress statements WITHOUT PREJUDICE.

As an initial matter, the Court is satisfied that the investigatory stop of the Defendant's vehicle was supported by reasonable suspicion. It is well-established that an officer may conduct a traffic stop, if the officer has reasonable suspicion that a traffic violation has occurred, or that criminal activity is afoot. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002). In this case, the evidence before the Court shows that, before effectuating a traffic stop, Detective Parrish observed that the Defendant's vehicle had an inoperable tag light, in violation of Maryland motor vehicle laws. ECF No. 55; ECF No. 47 at 4. Notably, Md. Code Ann. Transp. Art. § 22-204(f) provides, in pertinent part, that "[e]ither a tail lamp or a separate lamp shall be constructed and placed to illuminate, with a white light, the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." Md. Code Ann., Transp. Art. § 22-204(f); *see also* ECF No. 47 at 34.

The evidence also shows that Detective Parrish observed that the Defendant's vehicle had dark window tint, which he believed created a safety concern. ECF No. 55. Given this, Detective Parrish had reasonable suspicion that a traffic violation had occurred with regards to the Defendant's vehicle. *See Berekmer*, 468 U.S. at 439; *Arvizu*, 534 U.S. at 273. And so, Detective Parrish was justified in effectuating an investigatory traffic stop.

The evidence before the Court also shows that Detective Parrish had reasonable suspicion of another crime, to justify continuing the traffic stop involving the Defendant's vehicle. It is well-established that, if an officer seeks to prolong a traffic stop, to allow for investigation into matters beyond the scope of the initial stop, the officer must have reasonable suspicion of other criminal activity or the driver's consent. *United States v. Branch*, 537 F.3d at 336. Here, it is undisputed that the Defendant provided Detective Parrish with a Washington, DC learner's permit and a Virginia registration bearing a Maryland address during the traffic stop and that there was no other driver present in the Defendant's vehicle. ECF No. 55; ECF No. 47 at 4-11; ECF No. 28. Given this, Detective Parrish had reasonable suspicion that the Defendant was violating Maryland motor vehicle laws, which prohibit driving a vehicle in Maryland without a driver's license and driving a vehicle with a learner's permit and without required supervision. *See* Md. Code Ann. Transp. Art. § 16-105(b)(1). And so, the evidence shows that Detective Parrish also had a reasonable suspicion to justify continuing the traffic stop.

The evidence before the Court also shows that the officers appropriately seized the handgun recovered from the Defendant's vehicle, because Officer Brackett observed the butt of the handgun in plain view when he shined his flashlight inside the Defendant's vehicle. ECF No. 55; Gov. Ex. 2 at 21:06:07-21:06:19; *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (holding that the plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity) (citation omitted); *Texas v. Brown,* 460 U.S. 730, 739-40 (1983) (holding that an officer's conduct, including shining a flashlight to illuminate the car's interior, which enabled him to observe the interior of the defendant's car "trenched upon no [Fourth Amendment] right"); *United States v. Rumley*, 588 F.3d 202, 206 (4th Cir. 2009) (holding that an officer lawfully seized a pistol when it came into plain view and the "deputy immediately recognized as potential evidence of a crime."). The evidence before the Court shows that Officer Brackett observed the butt of the handgun in plain view when he shined his flashlight into the Defendant's vehicle. ECF No. 55; Gov. Ex. 2 at 21:06:07-21:06:19. Given this, Officer Brackett's seizure of the handgun from the Defendant's vehicle did not violate the Fourth Amendment. *Illinois v. Andreas*, 463 U.S. at 771; *Texas v. Brown,* 460 U.S. at 739-40; *Rumley*, 588 F.3d at 206.

Lastly, the evidence shows that the officers' subsequent search of the Defendant's vehicle did not violate the Fourth Amendment. Again, the evidence shows that Officer Brackett viewed a handgun in the Defendant's vehicle in plain view, thereby giving the officers probable cause to believe that the Defendant's vehicle contained contraband. ECF No. 55; Gov. Ex. 2 at 21:06:07-21:06:19; *United States v. Carroll*, 267 U.S. 132, 158-59 (1925) ("a warrantless search of a vehicle is not unreasonable, and does not violate the Fourth Amendment, if the police have probable cause to believe that the vehicle has contraband."). And so, the search of the Defendant's vehicle did not violate the Fourth Amendment.

Turning to the Defendant's motion to suppress statements, the Defendant argues with more persuasion that the statements that he made to law enforcement during the December 26, 2023, traffic stop should be suppressed. It is well-established that the Government may not introduce statements stemming from the custodial interrogation of a defendant, unless it demonstrates that procedural safeguards were used to secure the privilege against self-incrimination under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1967). The

Supreme Court has held that the term "interrogation" under *Miranda* refers not only to express questioning, but also to police words or conduct that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1990). And so, the Court must suppress any statements made by a criminal defendant, without first receiving a *Miranda* warning, if the questions asked are reasonably likely to elicit an incriminating response from the defendant. *United States v. Azua-Rinconada*, 914 F.3d 319, 325 (4th Cir. 2019) (citations omitted).

In this case, there is no dispute that the Defendant was in custody when Detective Parrish placed him in handcuffs during the December 26, 2023, traffic stop. Gov. Ex. 2 at 21:06:07-21:06:19. It is also undisputed that Detective Parrish and the other officers asked the Defendant several questions while he was in custody, before providing a *Miranda* warning. Gov. Ex. 3 at 21:07:30, 21:07:30- 21:07:47, 21:08:11, 21:10:36. While these undisputed facts raise concerns about whether procedural safeguards were used to secure the Defendant's privilege against self-incrimination under the Fifth Amendment, the Defense has not sufficiently identified the questions or statements that the Defendant made prior to receiving a *Miranda* warning, nor shown that these statements should be suppressed. Given this, the Court DENIES the Defendant's motion to suppress with regards to the Defendant's statements WITHOUT PREJUDICE.

V.   **CONCLUSION**

For the foregoing reasons, the Court:

(1) **DENIES** the Defendant's motion to dismiss the Indictment under the Second Amendment (ECF No. 30);

(2) **DENIES** the Defendant's motion to suppress with regards to the evidence recovered from the search of the Defendant's vehicle; and

(3) **DENIES** the Defendant's motion to suppress with regards to the Defendant's statements **WITHOUT PREJUDICE** (ECF No. 28).

**IT IS SO ORDERED.**

                                                s/Lydia Kay Griggsby
                                                LYDIA KAY GRIGGSBY
                                                United States District Judge